UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| HERITAGE VINTAGE | ) | |
|---|---|---|
| INVESTMENTS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 05582 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| KMO DEVELOPMENT GROUP, INC.; | ) | |
| CAROLINA BUENO, LLC; BRUCE G. | ) | |
| BOLZLE; and GREG D. OWENS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Greg Owens filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), arguing that this Court lacks personal jurisdiction over him in his personal capacity.[1] R. 15, Mot. to Dismiss.[2] On December 11, 2015, after reviewing the parties' initial briefing, the Court ordered the parties to submit supplemental briefs and affidavits addressing which of Owens's contacts (if any) with Illinois (the forum state) relate to the negotiating and signing of Owens's personal guaranties, the only contracts that directly bind Owens personally. R. 34, 12/11/15 Opinion. The parties have now supplied this additional information. But in doing so, they offer a conflicting set of facts, so an evidentiary hearing, and possibly some discovery, is needed. For the reasons explained below, Owens's motion—for the time being—is denied without prejudice because Heritage has made out a *prima facie* case for

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332.
[2]Citations to the Court's docket are labeled as "R." followed by the docket number and applicable page or paragraph number.

jurisdiction, but Owens can renew the motion after presenting the facts at the hearing.

## I. Background

The prior opinion outlined the facts underlying Owens's motion to dismiss, *see* 12/11/15 Opinion, so here only the most pertinent facts are described. Heritage Vintage Investments, LLC initially filed this action in the Circuit Court of Cook County, Illinois, to enforce two promissory notes it had issued to KMO Development Group, Inc. and Carolina Bueno, LLC. R. 16, Exh. A at 1-11.[3] Heritage's loan to KMO Development Group, which was executed in June 2006 and amended in June 2007, totaled $1.75 million[4], Compl. ¶¶ 7, 45; its loan to Carolina Bueno, which was executed in February 2007, totaled $663,000, *id.* ¶¶ 16, 52.

Heritage also filed suit against two individuals: Bruce G. Bolzle and Greg D. Owens. Bolzle is an Executive Vice President at KMO Development Group and Owens is the corporation's President, R. 26 at 1; R. 1, Notice of Removal at 2; Owens is also a member of KMO Carolina, LLC, which is one of Carolina Bueno, LLC's two members, R. 27, Suppl. Juris. Stmt. at 1. Bolzle and Owens both signed individual guaranties for the KMO Development note and the Carolina Bueno note, personally guaranteeing the performance of each company's obligations under its respective note. Compl. ¶¶ 9, 18, 24, 31.

---

[3]This exhibit includes Heritage's complaint (pages 1 through 12), as well as copies of the promissory notes and associated guaranties (pages 13 through 24). Going forward, when referring to Heritage's complaint, the Court will cite directly to the complaint and the applicable paragraph number.

[4]Heritage originally agreed to loan KMO Development Group $1.2 million in June 2006. Compl. ¶ 7. Around a year later, in June 2007, Heritage agreed to loan KMO Development Group an additional $550,000, increasing its loan to $1.75 million. *Id.*

Heritage now alleges that both KMO Development Group and Carolina Bueno have defaulted on their loans. Compl. ¶¶ 44-57. In addition to the case against the corporate entities, Heritage also wants a judgment against Owens on both of Owens's personal guaranties. *Id.* ¶¶ 29, 36. After properly removing the case to federal court, *see* R. 1, Notice of Removal, Owens moved to dismiss the case against him in his personal capacity under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Mot. to Dismiss. Owens advanced several arguments in support of dismissal. He argued that the Court lacks both general and specific jurisdiction over him, and that he is protected by Illinois's fiduciary shield doctrine, which precludes the exercise of personal jurisdiction "over an individual whose presence and activity in the state in which the suit is brought [is] solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994); R. 16, Def.'s Br. at 4-8; R. 26, Def.'s Reply Br. at 1. He also argued that the guaranty he signed in conjunction with the KMO Development note included a forum selection clause that required suit to be brought in Oklahoma, not Illinois. Def.'s Br. at 7.

The earlier opinion, issued on December 11, 2015, rejected Owens's fiduciary shield argument, and his argument that his guaranty for the KMO Development note required suit to be brought in Oklahoma. 12/11/15 Opinion at 12-14. But the Court agreed with Owens that Heritage had failed to establish that Owens, in his personal capacity, was subject to general jurisdiction in Illinois. *Id.* at 7-9.

That left only the question of whether Owens's contacts with Illinois were sufficient to establish specific jurisdiction. Although the parties discussed the issue of specific jurisdiction in their initial briefing, more information was needed to determine if specific jurisdiction applies. 12/11/15 Opinion at 9-12. As the prior order explained, the most important contacts relevant to a specific-jurisdiction analysis of Owens in his individual capacity are those contacts that relate to the personal guaranties—as those are the only two contracts that involve Owens in his personal capacity (as distinct from what he did on behalf of the corporate entities). *Id.* at 11 (citing *RAR, Inc. v. Turner*, 107 F.3d 1272, 1278 (7th Cir. 1997)). But rather than focus on those contacts in their briefing and affidavits, Heritage and Owens instead discussed the contacts Owens had with Illinois without specifying which contact related to which contract. This made it difficult to determine which (if any) of Owens's contacts were most important to the specific-jurisdiction analysis. So the Court ordered the parties to file supplemental briefs and affidavits addressing "the nature, extent, and location of the negotiations that occurred between Heritage and Owens *on Owens's personal guaranties* (not on the transaction documents generally)." *Id.* at 12. The parties have now filed their supplemental briefs and affidavits, R. 38; R. 53, and the Court addresses Owens's motion to dismiss for a second time.

## II. Standard

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. It is well settled that a complaint need not allege personal

jurisdiction; but if a defendant moves to dismiss on the ground that personal jurisdiction is lacking, it is the plaintiff who bears the burden of showing that jurisdiction is proper. *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider any affidavits submitted by either side. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir. 1984); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F. Supp. 126, 128 (N.D. Ill. 1989). When a motion is based solely on the submission of written materials, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). But when there is a dispute in those written materials about facts necessary to rule on the issue, the Court must grant discovery and, if necessary, hold an evidentiary hearing. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). When a hearing is held, the plaintiff bears a heavier burden; the plaintiff must instead "prove what it alleged," *id.*, and establish personal jurisdiction by a preponderance of the evidence. *Purdue*, 338 F.3d at 783.

### III. Analysis

The only issue remaining under Owens's dismissal motion is whether Owens is subject to specific jurisdiction. As discussed in the earlier opinion, a federal court sitting in diversity "has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779. In Illinois, a court has personal jurisdiction over a non-resident defendant if

5

Illinois's long-arm statute authorizes jurisdiction, and if asserting jurisdiction does not violate the Fourteenth Amendment's Due Process Clause. *Hyatt*, 302 F.3d at 713. Because Illinois's "long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," the two inquiries are considered as one. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); 735 ILCS 5/2-209(c). So, the key question is "whether the defendant[] ha[s] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 701 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can, of course, take on two forms: general or specific. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55 (2014). The Court has already determined that general jurisdiction is lacking here, 12/11/15 Opinion at 7-9, so that leaves only specific jurisdiction. For specific jurisdiction to apply over a non-resident defendant, the defendant must direct his activities at the forum state, and the cause of action must arise from or relate to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Put another way, the defendant must have engaged in "some act by which [he] purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State," and the cause of action must arise from that act. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Purdue*, 338 F.3d at 780-81 (explaining that specific jurisdiction requires that the "defendant ha[ve] deliberately engaged in significant activities within the forum state" or "created continuing obligations between himself and a resident of the forum").

"[T]he contacts supporting specific jurisdiction can take many different forms." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). For cases involving a contract, courts generally consider factors such as: (i) which party initiated the transaction, *Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 283 (7th Cir. 1990); (ii) where negotiations took place, *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176-77 (7th Cir. 1971); (iii) where the contract was executed, *id.*; *Cont'l Bank, N.A. v. Everett*, 964 F.2d 701, 703 (7th Cir. 1992); (iv) where performance was to take place, *Cont'l Bank, N.A.*, 964 F.2d at 703; *O'Hare Int'l Bank*, 437 F.2d at 1177; and (v) whether the contract included a choice of law provision, *Cont'l Bank, N.A.*, 964 F.2d at 703; *O'Hare Int'l Bank*, 437 F.2d at 1177. *See also MAC Funding Corp. v. Northeast Impressions, Inc.*, 215 F. Supp. 2d 978, 981 (N.D. Ill. 2002). What these factors aim to discern is whether a defendant has "purposefully directed" his conduct toward the forum state, so much so that he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 494 (7th Cir. 2014). Of course, not all factors are created equal. For example, if substantive negotiations took place in the forum state, that can, on its own, be enough to establish specific jurisdiction. *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1274 (N.D. Ill. 1991) ("Where in-state negotiations are of some substance, they clearly rise to the level of transaction of business in Illinois."); *Ronco, Inc. v. Plastics, Inc.*, 539 F. Supp. 391, 396 (N.D. Ill. 1982); *First Nat'l Bank of Chicago v. Boelcskevy*, 466 N.E.2d 1182, 1185 (Ill. App. Ct. 1984). And

7

the more factors that show a defendant directed his activities toward the forum state, the more likely it is that the defendant should reasonably anticipate being haled into court there.

Here, Heritage continues to assert that Owens has made enough contact with Illinois to justify exercising specific jurisdiction over him. R. 38, Pl.'s Suppl. Br. To support its contention, Heritage has provided additional affidavits from Michael Christie, President of Heritage, *see* R. 38, Exh. B, Christie Suppl. Aff.; *see also* R. 55, Exh. A, Christie Second Suppl. Aff.; and Mark Glazer, the principal owner of Heritage, *see* R. 38, Exh. C, Glazer Suppl. Aff. Relying on these affidavits, Heritage asserts that Owens came to Heritage's offices in Illinois on two separate occasions—June 15, 2006 and January 23, 2007—to negotiate his personal guaranties, Christie Suppl. Aff. ¶ 5; Glazer Suppl. Aff. ¶ 5; that Owens agreed to provide his personal guaranties at those meetings after being told by Heritage that it would not issue the underlying notes to KMO Development Group or Carolina Bueno without the guaranties, Glazer Suppl. Aff. ¶¶ 6-7; Christie Suppl. Aff. ¶¶ 6-7; and that Owens, through the underlying promissory notes, was required to send all payments to Heritage's offices in Illinois, Christie Second Suppl. Aff. ¶ 9; *see also* Pl.'s Suppl. Br. at 5. Based on these contacts, Heritage contends that Owens "has far more than the minimum contacts necessary for jurisdiction in Illinois." Pl.'s Suppl. Br. at 5.

Owens disagrees, R. 53, Def.'s Suppl. Resp. Br., and has submitted his own supplemental affidavit. *See* R. 53, Exh. A, Owens Suppl. Aff. In his affidavit, Owens does not contest that he met with Heritage in Illinois on June 15, 2006 and January

23, 2007. *Id.* ¶¶ 6-8. He does, however, assert that by the time he visited Illinois, he had already discussed and agreed to sign the personal guaranties—when he was sitting in his office in Oklahoma:

> The personal guaranties … which were requested by Heritage and signed by me, were first discussed over the telephone by me and Michael Christie, in advance of the June 15, 2006 and January 23, 2007 meetings … . During those phone conferences with Mr. Christie, at which time I was in my office in Oklahoma, I agreed that I would execute personal guaranties for the KMO Development and Carolina Bueno Notes.

*Id.* ¶ 6. Owens contends that any talk of his guaranties at those in-person meetings was done merely to "reiterate[]" what had already been discussed and agreed to over the phone. *Id.* ¶ 7. Owens further asserts that "[t]here were no negotiations or discussions of any … terms of the guaranties at any meeting between him and Heritage in Illinois," that Heritage "sent the guaranties to him in Oklahoma," and that he "reviewed" and "signed" the guaranties in Oklahoma. *Id.* ¶ 8.

So some important facts are in dispute. What the parties do seem to agree on, however, is the following: that Heritage initiated discussions on the guaranties; that Owens met with Heritage in Illinois twice to discuss the underlying promissory notes and guaranties; that the underlying promissory notes contain an Illinois choice of law provision and require that payments be sent to Heritage's offices in Illinois; and that Owens executed the guaranties while in Oklahoma. One of the key facts that remains in dispute is where the negotiations on the guaranties were conducted. Both parties are somewhat vague in their descriptions of the negotiations. For example, neither discusses which of the guaranties' terms were

9

negotiated. It is not until Christie's third affidavit[5] that he states that the guaranties had to be "unconditional" and to contain "terms consistent with loans of this type." Christie Second Suppl. Aff. ¶ 9. But even this provides little detail on what the parties actually negotiated. Both Heritage and Owens, however, are adamant in their respective positions regarding where negotiations took place: Heritage in its position that negotiations occurred in Illinois, Christie Suppl. Aff. ¶¶ 5-7; Glazer Suppl. Aff. ¶¶ 5-7, and Owens in his position that no negotiations occurred in Illinois, Owens Suppl. Aff. ¶8. It is also unclear where the parties first reached an agreement on the guaranties. Heritage suggests that Owens did not agree to provide the guaranties until he was in Illinois at the in-person meetings. Glazer Suppl. Aff. ¶ 7. Owens, in contrast, says that he agreed to do so during his telephone calls with Christie when Owens was in Oklahoma. Owens Suppl. Aff. ¶ 6.

If it were possible to decide the jurisdictional issue on just the undisputed facts, the Court would do so. But it is not possible. On the one hand, some of the undisputed facts point in favor of exercising jurisdiction. Owens came to Illinois twice to meet with Heritage, and neither party disputes that the guaranties were brought up during those meetings. (Although whether the guaranties were brought up as a mere reiteration of a previously reached agreement, or for negotiation purposes remains unclear.) The underlying loan documents (though not the guaranties) also contain an Illinois choice-of-law provision, R. 16, Exh. A at 14, 18,

---

[5]Christie supplied his first affidavit in conjunction with Heritage's initial briefing on this issue. R. 21, Exh. 4. He provided his second affidavit when Heritage filed its initial supplemental brief. R. 38, Exh. B. He provided his third when Heritage filed its reply brief in response to Owens's supplemental brief and affidavit. R. 55, Exh. A.

10

and they require that payments be sent to Heritage's offices in Illinois, *id.* at 13, 17. True, the payment locale is not enough standing alone, *see MAC Funding Corp.*, 215 F. Supp. 2d at 981-82 (finding no personal jurisdiction where guarantor's only connection with Illinois was that payment had to be sent to Illinois), but the point remains that Owens certainly had some contact with Illinois.

On the other hand, some of the undisputed facts point away from a finding that Owens purposefully availed himself of the privilege of conducting business in Illinois. Although the underlying loan documents do contain an Illinois choice-of-law provision, the *guaranties* themselves do not. R. 16, Exh. A at 20-21. The guaranties are silent on which law is to apply, so there is no choice of law provision tipping the scale toward Heritage. *Cf. Cont'l Bank, N.A.*, 964 F.2d at 703 (emphasizing the fact that "*the guarantors agreed* that Illinois law would govern" (emphasis added)); *O'Hare Int'l Bank*, 437 F.2d at 1177 (relying on fact that the *guaranty* specifically provided that it shall be construed according to Illinois law). And the fact that Owens traveled to Illinois does little to show that Heritage's claim in this case arose out of those contacts—unless negotiations actually took place here. *See Feldman Assocs., Div. of Adver. and Design Servs., Ltd.*, 676 F. Supp. 877, 880 (N.D. Ill. 1988) ("Once a nonresident [defendant] comes to Illinois and conducts substantial negotiations concerning a contract, that [defendant] exposes itself to Illinois jurisdiction in the event the contract becomes the subject of litigation.").

Other facts counsel against the exercise of personal jurisdiction over Owens. For example, the parties do not dispute that it was Heritage, and not Owens, that

first brought up the guaranties. Glazer Suppl. Aff. ¶ 6 ("[W]e [being Heritage] expressly advised Owens that Heritage would require his Personal Guaranty on the loans as a condition to making the loans."); Christie Suppl. Aff. ¶ 6 (same). Had this factor cut the other way with Owens initiating the discussions, this factor would have provided strong support for Heritage's position that personal jurisdiction is satisfied here. When it is the non-resident defendant that initially seeks out business from the in-state plaintiff, there is little question that the defendant purposefully availed himself of the benefits of conducting business in the forum state. *See Heritage House Rests., Inc.*, 906 F.2d at 283-84 (finding personal jurisdiction where defendants "reached out" to plaintiffs through telephone calls and mailings); *Mors v. Williams*, 791 F. Supp. 739, 746 (N.D. Ill. 1992) (finding personal jurisdiction where out-of-state defendant initiated contact with Illinois plaintiff and payments were required to be sent to Illinois). But in this case, it was Heritage who first brought up the issue of the personal guaranties, not Owens. Heritage also does not challenge the fact that Owens executed the personal guaranties in Oklahoma, not Illinois, which again weighs against finding jurisdiction here. Glazer Suppl. Aff. ¶ 7 (asserting that after the meetings in Illinois, "[a]ll that was left was to paper the agreement"); Owens Suppl. Aff. ¶ 8 ("I reviewed the guaranties in Oklahoma, and signed them there."). *See Cont'l Bank, N.A.*, 964 F.2d at 703 (considering as a factor in support of jurisdiction the fact that "the documents recite[d] that they were delivered and executed in Illinois"); *O'Hare*

*Int'l Bank*, 437 F.2d at 1177 (relying, in part, on the fact that the contract was not considered accepted until executed in Illinois).

To bolster its contention that jurisdiction is proper here, Heritage likens its claim to the claim addressed by the Illinois Appellate Court in *First Nat'l Bank v. Boelcskevy*, 466 N.E.2d 1182 (Ill. App. Ct. 1984). Pl.'s Suppl. Br. at 4-5. But *First Nat'l Bank* is distinguishable. There, the guarantor, a Florida resident, attended a meeting in Illinois where he was advised by the bank that he would need to execute a personal guaranty in order for his company to obtain financing. *Id.* at 1184. The terms of the guaranty were discussed and negotiated at that meeting in Illinois. *Id.* at 1185. The guarantor later signed the guaranty in Florida, which expressly stated that it would be governed by Illinois law, and mailed it to the bank in Illinois. *Id.* at 1184-85, 1187. The notes underlying the guaranty required that all payments be sent to the bank's office in Illinois. *Id.* at 1185. On these facts, the Illinois Appellate Court concluded that there was personal jurisdiction over the guarantor in Illinois, because the "[n]egotiation, performance and invocation of Illinois law" all supported a finding that the defendant had purposefully transacted business in Illinois. *Id.* at 1185-87. Here, by contrast, many of these same facts are disputed. For example, the parties dispute whether the personal guaranties were first discussed in Illinois, or over the phone when Owens was in Oklahoma; it is also disputed whether any part of the negotiations for the guaranties took place in Illinois. And, unlike the guaranty in *First Nat'l Bank*, Owens's guaranties did not include a choice-of-law provision. *First Nat'l Bank* is not on point here.

## IV. Conclusion

This leaves us with the need for an evidentiary hearing to resolve the important factual disputes.[6] Limited discovery might also be warranted in advance of the hearing. Before the next status hearing, the parties shall confer on whether limited discovery is appropriate, and if so, what the limits of the discovery would be. The Court notes again that the delay, risk, and cost directed at the personal-jurisdiction dispute (including a potential appeal down the line) could be avoided by filing suit against Owens in Oklahoma. And the parties ought to engage in settlement negotiations as well, now that it is clear that even more time and expense will be consumed by just the jurisdictional threshold. In any event, for now Owens's motion to dismiss [R. 15] is denied without prejudice, with the chance to renew the motion after the evidentiary hearing.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2016

---

[6] Had the parties included express choice-of-law and venue provisions in the guaranties themselves, much of this back and forth could have been avoided. Unfortunately, they did not. They would be wise to do so in the future.